**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Enrico Enriquez, | No. CV-23-00611-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| G.D. Barri & Associates Incorporated, et al., | |
| Defendants. | |

Defendant G.D. Barri & Associates Inc. offers temporary contract labor to the power and utilities industries. (Doc. 26 ¶ 29.) Defendant Alexandria Dorsey owns Defendant GD Barri and controls the company's pay practices. (*Id.* ¶ 30.) Plaintiff, an employee of Defendants, brings this lawsuit under the Fair Labor Standards Act ("FLSA"), individually and on behalf of all others similarly situated, seeking to recover unpaid wages. (*See generally* Doc. 26.) Plaintiff alleges that Defendants failed to pay him overtime wages and instead paid him straight-time for overtime hours worked. (*Id.* ¶ 7.)

**I.**

This matter is before the Court on Plaintiff's Renewed Motion for Conditional Certification and Notice (Doc. 42). The Motion requests that the Court conditionally certify the following FLSA collective under 29 U.S.C. § 216(b):

> All employees of GD Barri who were paid straight time for overtime and staffed to power plants or similar facilities in the last three (3) years.

(Doc. 42 at 2.) Plaintiff's Motion also requests approval of a proposed notice and consent

procedure as well as an order from the Court directing Defendants to provide the names, job titles, dates of work, last known addresses and telephone numbers, and last known email addresses of the putative collective members. (*Id.* at 17.) Defendants respond that "Plaintiff has failed to identify the common decision, policy or plan of Defendants to which the putative [collective] members were purportedly subjected." (Doc. 43 at 2.) Defendants also request that, if the proposed collective is certified, it be narrowed significantly. (*Id.* at 11-14.) For the following reasons, the Plaintiff's Motion will be granted in part.

## II.

### A.

The FLSA provides employees with a private right of action to enforce the minimum wage and overtime provisions within the statute. *See* 29 U.S.C. § 216(b). The minimum wage provision mandates that covered employers pay employees "not less than" a prescribed statutory minimum. 29 U.S.C. § 207(a)(1). "Any employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation[.]" *Id.* § 216(b). A collective action to recover these damages may be brought "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Id.* Employees not named in the complaint who wish to join the action must give their consent in writing to the court in which the action is brought. *Id.*

The term "similarly situated" is critical for defining collective action status. Yet, the text of the FLSA does not define the term. Courts have taken a variety of approaches to fill in this gap. In *Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018), the Ninth Circuit considered the appropriate standard for district courts to apply when deciding a motion to certify a collective action. The court held that "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117. Plaintiffs' "burden is light," but conditional certification is "by no means automatic." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010). "The level of consideration is . . . akin to a

plausibility standard." *Campbell*, 903 F.3d at 1109. District courts are directed to focus on "similarities among the party plaintiffs" instead of scrutinizing differences. *Id.* at 1117. "If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id.* at 1114 (emphasis in original). The similarly situated requirement may be satisfied by showing that a plaintiff and the putative members of the collective action were subject to a common decision, policy, or plan of the employer. *Id.* at 1102. "The court's determination at this first step is based primarily on the pleadings and any affidavits submitted by the parties." *Kesley v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014) (internal quotations omitted).

Once the district court preliminarily certifies a FLSA class, a notice is disseminated to putative members of the collective action "advising them that they must affirmatively opt in to participate in the litigation." *Campbell*, 903 F.3d at 1109. Following discovery, "[t]he employer can move for 'decertification' of the collective action for failure to satisfy the 'similarly situated' requirement in light of the evidence produced to that point." *Id.*

**B.**

The Court finds that Plaintiff's proposed collective satisfies the requirement that collective members be similarly situated with one another. According to Plaintiff, he and the putative class members are similarly situated because they all:

> (1) received straight time for overtime; (2) were all required or permitted to work overtime without receiving compensation at the legal rate of pay; (3) were all staffed by [Defendant] GD Barri to power plants and similar facilities; (4) were all hourly employees of [Defendant] GD Barri that it mischaracterized as exempt; (5) were never guaranteed a salary; and (6) were only paid for hours actually worked.

(Doc. 42 at 3.) These allegations provide material factual and legal similarity among the putative collective. Namely, whether Defendants' policies or practices resulted in Plaintiff and the putative collective members being misclassified as exempt employees and thus deprived of overtime pay.

Defendants argue that "Plaintiff has failed to identify the common decision, policy

or plan of Defendants to which the putative [collective] members were purportedly subjected." (Doc. 43 at 2.) Instead, according to Defendants, Plaintiff impermissibly "attempt[ed] to use the doctrine of offensive non-mutual collateral estoppel . . . to bootstrap findings from [*Gardner v. G.D. Barri & Ass'ns Inc.*, No. CV-20-01518-PHX-ROS, 2021 WL 2474032 (D. Ariz. June 17, 2021)], despite the Court's prior rulings and admonitions, in order to obtain conditional certification." (*Id.* at 6.) Defendants contend that, without *Gardner*, "there are insufficient allegations to support even the light burden of showing that the purported class members share material factual or legal similarities for purposes of granting conditional certification." (*Id.* at 9.)

        The Court does not interpret Plaintiff's reliance on *Gardner* as an attempt at offensive non-mutual collateral estoppel. The Court finds that Plaintiff has met his light burden even without considering *Gardner*. He has alleged that Defendants applied the same improper policy or plan to all their employees, and supported that allegation with declarations, payroll records, timesheets, and offer letters. (Docs. 42-1 through -12.) That is all that is required of him at this point. *See Robinson v. Maricopa Cnty. Special Health Care Dist.*, — F. Supp. 3d —, (D. Ariz. 2023) (conditionally certifying a collective of the defendant's current and former employees who "were subject to the same time, pay, and accounting practices . . . leading to underpayment of wages (including minimum and overtime wages)").

        Defendants argue that the proposed collective should nonetheless be narrowed in three ways. First, Defendants contend that the collective should include only Arizona employees assigned to Defendant G.D. Barri's client Arizona Public Service, such as Plaintiff and the employees he references. (Doc. 43 at 13.) But Plaintiff has alleged that Defendants' common practice of paying straight-time for overtime was not solely applied to Arizona employees staffed with Arizona Public Service. Plaintiff submitted a sworn declaration that specifically stated,

> Based on my personal knowledge drawn from my experience and observations working for GD Barri, conversations with other workers staffed by GD Barri to its clients as hourly workers, and my familiarity with multiple staffing agencies'

> payroll practices and policies, I know that other hourly power plant workers were subjected to the same straight time for overtime pay practice, regardless of actual job title or rate of pay, or any other individualized factor . . . . Based on this personal knowledge, I also know that other hourly workers who were paid straight time for overtime like me regularly worked more than 40 hours a week and were only paid for the hours they worked.

(Doc. 42-1 at 3-4.) Plaintiff's allegation is supported by sworn declarations from four other employees. (Doc. 42-2 at 3; Doc. 42-3 at 3; Doc. 42-4 at 3-4; Doc. 42-5 at 3-4.) This is sufficient to meet Plaintiff's light burden.

Next, Defendants argue that the collective should exclude any claims for activity that occurred after Defendants changed their purportedly unlawful pay practices. (Doc. 43 at 13-14.) Plaintiff, in his Amended Complaint, alleges "upon information and belief" that Defendant "GD Barri changed its pay practices." (Doc. 29 ¶ 43.) Neither party has provided the date of the change, nor any details regarding what the change entailed. (*See generally* Docs. 29, 42, 43, 49.) At most, the pleadings indicate that Defendants' pay practices may have changed in some way at some point. Whether this presently ambiguous and uncertain change in pay practices makes the proposed collective not similarly situated is best determined at the decertification stage, following at least some discovery. At that point, Defendant "can move for decertification of the collective action for failure to satisfy the similarly situated requirement in light of the evidence produced to that point . . . and the Court will then take a more exacting look at Plaintiff's allegations and the record." *Campbell*, 903 F.3d at 1109 (cleaned up).

Finally, Defendants contend that the collective should exclude all opt-in plaintiffs in *Gardner* who settled their claims. (Doc. 43 at 14.) Plaintiff responds that "the *Gardner* settlement does not bar recovery for wages earned after the settlement release date." (Doc. 49 at 5.) Plaintiff is correct. *See Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 802 n.2 (9th Cir. 2010) ("[A]n employee may not waive his or her rights under the FLSA[.]"). Thus, the Court will exclude from notice only those former employees who released their claims in the *Gardner* settlement and did not work for Defendants after the

effective date of that settlement.

**III.**

Plaintiff next moves the Court to approve of a comprehensive notice and consent plan. (Doc. 42 at 17-19.) In sum, Plaintiff requests that the Court: (1) approve its proposed notice and consent form; (2) adopt its proposed schedule; and (3) order Defendants to disclose the names, job titles, dates of work, last known addresses and telephone numbers, and last known email addresses of the putative collective members. (*Id.*)

"In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989). Courts must carefully avoid authorizing a notice procedure that amounts to "the solicitation of claims." *Id.* Here, because none of the language threatens the appearance of a judicial endorsement of the merits, the Court approves of Plaintiff's proposed collective action notice and the consent to join form (Doc. 42-14) as fair and accurate. *See id.* at 170.

Defendants raise no objections to the notice and consent plan, except that they propose modifications to certain of Plaintiff's proposed deadlines. (Doc. 43 at 14.) Specifically, they request thirty days (instead of ten) to disclose "the names, last known addresses, email addresses (both personal and work, if available), phone numbers, and dates of employment of the putative collective members to be notified in a usable electronic format," and, in the interest of fairness, forty days (instead of twenty) for Plaintiff to "send the Court-approved notice and consent form to the putative collective members via First Class U.S. mail, email, and text message." (Doc. 42-15 at 2 (cleaned up).) Plaintiff opposes the request, arguing that "every day Defendants can delay notice allows them to reduce their liability at the expense of [their] employees." (Doc. 49 at 6.)

The Court finds that Defendants' suggested modifications to Plaintiff's proposed deadlines are reasonable. *See O'Neal v. Am.'s Best Tire LLC*, No. CV-16-0005-PHX-DGC, 2016 WL 3087296, at *7 (D. Ariz. June 2, 2016) (giving thirty days to disclose similar

information). Providing Defendant with an extra twenty days to fulfill its disclosure responsibilities consistent will not prejudice the putative collective members. Therefore, the Court will implement Defendants' requested extension.

## IV.

Accordingly,

**IT IS ORDERED** as follows:

1. Plaintiff's Renewed Motion for Conditional Certification and Notice (Doc. 42) is **granted** to the extent that the following FLSA collective action is certified:

> **All employees of GD Barri who were paid straight time for overtime and staffed to power plants or similar facilities in the last three (3) years, excluding those former employees who both released their claims in the settlement resulting from *Gardner v. G.D. Barri & Assocs. Inc.*, No. CV-20-01518-PHX-ROS, 2021 WL 2474032 (D. Ariz. June 17, 2021) and did not work for GD Barri after the effective date of that settlement.**

2. The notice and consent forms submitted with Plaintiff's Motion (Doc. 42-14), are authorized to be disseminated as specified in Plaintiff's Motion and in accordance with the following schedule:

   a. Defendants shall, **within thirty (30) days from the date of this Order**, disclose the names, last known addresses, email addresses (both personal and work, if available), phone numbers, and dates of employment of the putative collective members to be notified in a usable electronic format.

   b. Plaintiff's Counsel shall, **within forty (40) days from the date of this Order**, send the Court-approved notice and consent form to the putative collective members via First Class U.S. mail, email, and text message.

   c. Plaintiff's Counsel is authorized to, **within thirty (30) days from the date that notice is mailed to the putative collective members**, send a second identical copy of the notice and consent forms to the putative collective members via First Class U.S. mail, email, and text.

   d. The putative collective members shall have **sixty (60) days from the**

**date that the first notice is mailed to them** to return their signed consent forms to Plaintiff's Counsel for filing with this Court.

Dated this 1st day of March, 2024.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge